In the District Court of the United States
For the District of South Carolina
BEAUFORT DIVISION

| | | |
|---|---|---|
| Robert Christopher Shirley, #288452, | ) | |
| | ) | Civil Action No. 9:07-2996-HFF-GCK |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Colie Rushton, Warden of McCormick | ) | **OF THE MAGISTRATE JUDGE** |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

## I.    INTRODUCTION

The Petitioner, Robert Christopher Shirley ("Petitioner" or "Shirley"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code, Section 2254.  By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  This case is before the undersigned United States Magistrate Judge pursuant to the provisions of Title 28, United States Code Section 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  The above-named Respondent has filed a motion for summary judgment in this case [16], and therefore this Report is prepared for review by the District Court.

## II.    *PRO SE* PETITION

Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) *(per curiam)*; *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. §

1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) *(en banc)*, *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

   *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Such is the case with the present Petition.

### III.    PROCEDURAL HISTORY IN STATE COURT

#### A.  Proceedings in the Court of General Sessions

The Anderson County Grand Jury indicted Petitioner at the March 2002 term of court for murder (02-GS-04-0977) and possession of a firearm during commission of a violent crime (02-GS-04-0978).  Petitioner was represented by Attorneys William N. Epps, Jr., and Julian Stoudemire on these charges.  On October 30, 2002, Petitioner entered *Alford* guilty pleas before the Honorable J. C. Nicholson.  The State agreed to accept a plea to voluntary manslaughter on the murder indictment with a recommendation of thirty (30) years.  The next day Judge Nicholson sentenced Shirley to twenty seven (27) years for voluntary manslaughter and a concurrent five (5) years for possession of a firearm.  Shirley did not file a direct appeal from his convictions and sentences

#### B.  Petitioner's Application for Post-Conviction Relief

On September 19, 2003, the Shirley filed a *pro se* post-conviction relief ("PCR") application (*Shirley v. State*, 2003-CP-04-2920) (App. pp. 56-65), in which he alleged claims of ineffective assistance of counsel and involuntary guilty plea.  The State filed its Return on February 18, 2004.  (App. p. 66)

The Honorable Lee S. Alford held an evidentiary hearing into the matter on September 1, 2005.  (App. pp. 71-152)  Petitioner was present at the hearing and represented by Robin Cromer, Esquire.  Assistant Attorney General Molly Crum represented the State.  A hearing was initially held on Petitioner's motion fora competency examination, during which both trial counsel and Petitioner's mother, Patricia Ragsdale, testified.  The judge denied the motion for a competency evaluation (PCR App.102), and the evidentiary hearing continued.  Petitioner called himself and his mother to testify; the State called both trial counsel.  Petitioner then called himself in reply.  Judge Alford took the matter under advisement, and on January 17, 2006, Judge Alford signed an Order of Dismissal with Prejudice in which he denied the Petitioner's application for post-conviction relief.  (App. p. 154)

A timely notice of appeal was served and filed.  Robert M. Pachak, Assistant Appellate Defender of the South Carolina Office of Appellate Defense, filed a *Johnson* Petition for Writ of Certiorari with the South Carolina Supreme Court, setting forth the sole ground for relief as follows:

> Whether there was any evidence to support the PCR judge's findings that petition was not entitled to a belated appeal of his guilty plea?

*Johnson* Petition, p. 2.  The State filed a letter return on June 26, 2006, to the *Johnson* Petition. On August 22, 2006, the South Carolina Supreme Court transferred the case to the South Carolina Court of Appeals pursuant to SCACR Rule 227(1).  On August 7, 2007, the Court of Appeals entered its Order denying the petition and granting counsel's request to withdraw.  The remittitur was entered on August 23, 2007.

### IV.  FEDERAL COURT HISTORY

The Petitioner is presently incarcerated in the McCormick Correctional Institution of the South Carolina Department of Corrections ("SCDC").  Petitioner filed this Petition for a writ of habeas corpus (the "Petition") on August 28, 2007 against the above-captioned Respondent, Colie Rushton, Warden of McCormick Correctional Institution ("Respondent").[1]  [1]  In his *pro se* Petition, Petitioner has raised the following grounds for relief:

> Ground One:          Ineffective Assistance of Counsel.
>
> Supporting Facts:    Trial counsel misadvised applicant regarding the results of the gunshot residue test, which revealed he had gunshot residue on his hands.  Counsel also told applicant how to answer the plea Judge's question's.  Further that counsel failed to move to suppress statement's made to police officer's.  Finally, counsel failed to object to the testimony of Dr. Goldberg who was not qualified.  As a result of the above counsel render ineffective assistance of counsel.

---

[1]  In *habeas corpus* cases, the Petitioner has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition.  In this case, the court has examined the envelope attached to Petitioner's Petition and has determined that the Petition was delivered to the MCI mailroom on August 28, 2007.

Ground Two:            Involuntary Guilty Plea.

    Supporting Facts:    Base[d] upon counsel' advice as stated above the plea was
                                   unknowingly based on the facts in relation to the law.  Hill v.
                                   Lockhart, 474 U.S. 52, 56 106.S.CT.366, 369 (1985).

Ground Three:          Motion for Mental Evaluation.

    Supporting Facts:    At the beginning of the Post-Conviction hearing the applicant's
                                   counsel moved the court to continue the matter in order to be
                                   evaluated.  Both motion's were denied.  Applicant wanted to
                                   establish by the physical evidence.. [sic] he further asserted that
                                   this rendered and made his plea involuntary.

(Habeas Petition [1]).

On October 9, 2007, the undersigned issued an Order which informed all parties that

Petitioner had the benefit of the holding of *Houston v. Lack* with respect to the filing date of the

Petition.  The Order also authorized service upon the Respondent, apprised the Respondent of the

deadline for filing dispositive motions, and notified Petitioner of the change of address rule.  [9]

Thereafter, the Respondent filed his Motion for Summary Judgment, and Return and

Memorandum to the Petition on December 3, 2007.  [16, 17]  Accordingly, the undersigned

issued an Order filed on December 4, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th

Cir. 1975), notifying the Petitioner of the summary judgment dismissal procedure and the

possible consequences if he failed to respond adequately to the Respondents' Return.  [18]

Thereafter, after requesting and receiving two extensions of time, on March 10, 2008, the

Petitioner filed his Response to the Respondents' motion for summary judgment.  [26]

Therefore, this case is ripe for review.

## V.  DISCUSSION

### A.  Timeliness of the Petition

Petitioner filed his petition on August 28, 2007.  Therefore, the provisions of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to this case.  *Lindh v.*

*Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d 615

Page 5 of  26

(4th Cir.), *cert. denied*, 521 U.S. 371 (1998); *Green v. French*, 143 F.3d 865 (4th Cir. 1998),

*cert. denied*, 525 U.S. 1090 (1999). This court has reviewed the pleadings and various

documents filed by the Petitioner and has determined that the Petition is timely under the

AEDPA.

## B. Exhaustion of State Court Remedies

Relief under Section 2254 may be had only after a *habeas* petitioner has exhausted his

state court remedies: "It is the rule in this country that assertions of error in criminal proceedings

must first be raised in state court in order to form the basis for relief in *habeas*. Claims not so

raised are considered defaulted." *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright*

*v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b). The theory of exhaustion is based on

28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions. *See generally,*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). The court's

exhaustion requirements under Section 2254 are explained in *Matthews v. Evatt*, 105 F.3d 907,

910-911 (4th Cir.), *cert. denied*, 522 U.S. 833 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.]
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced[.] (Citations omitted)

Thus, if claims were never reviewed by the highest court in South Carolina, those claims

will be barred and cannot be considered by the Court. A claim is unexhausted unless the

substance of a petitioner's claims are "fairly presented" to the state courts, *Matthews v. Evatt*,

105 F.3d at 911, or no state remedy remains available. *Id.* To fairly present a claim, a petitioner

must "include reference to a specific federal constitutional guarantee, as well as a statement of

facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (*citing Picard v. Connor*, 404 U.S. 270, 271 (1971)).

To satisfy the exhaustion requirement, a habeas petition must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner. The exhaustion requirement, though not jurisdictional, is strictly enforced. *Matthews v. Evatt*, 105 F.3d at 910-11 (citations omitted).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first method involves a direct appeal and, pursuant to state law, a petitioner is required to state all his grounds in that appeal. *See* SCAR 207 *and Blakeley v. Rabon*, 266 S.C. 68, 221 S.E.2d 767 (1976). The second method involves the filing of an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160. The applicant may allege constitutional violations in a post-conviction relief ("PCR") proceeding, but only if the issue could not have been raised by direct appeal. *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), *citing* S.C. Code Ann. §§ 17-27-20(a)(1), (b). A PCR applicant is also required to state all of his grounds for relief in his application. *See* S.C. Code Ann. § 17-27-90. "Exhaustion includes filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." *Gibson v. State*, 329 S.C. at 42, 495 S.E.2d at 428. As the South Carolina Supreme Court has explained: "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies. *In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).



Just as the exhaustion doctrine requires that a claim be fairly presented to all appropriate state courts before it is raised in a Section 2254 petition, if a claim has not been presented but no state remedy remains available, the claim will be considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). A claim that has been

procedurally defaulted in state court usually will not be reviewed in a Section 2254 petition. A federal court will hear a procedurally defaulted claim only if the petitioner " 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice.' " *Matthews v. Evatt*, 105 F.3d at 916, *quoting Coleman v. Thompson*, 501 U.S. at 750 (emphasis supplied by the undersigned). Unless a petitioner can demonstrate both "cause" and "prejudice", this Court will be procedurally barred from considering those claims that are procedurally defaulted. *Daniels v. Lee*, 316 F.3d 477, 486 (4th Cir.2003)

In the present case, Petitioner has exhausted his state remedies. Respondents concedes that the Petitioner has generally exhausted his state remedies with the disposition his PCR appeal to the South Carolina Court of Appeals.[2] *See generally*, S.C. Code Ann. § 17-27-100 (1985); *Drayton v. Evatt*, 312 S.C. 4, 430 S.E.2d 517 (1993); Rule 203, SCACR. As set forth below, the Petitioner either raised or had the opportunity to raise each of his claims in his application for PCR. Accordingly, this Petition is not subject to dismissal in order to continue the pursuit of available state remedies as there are none due to the state statute of limitations and successive application rule.

### C. Scope of Review

This Court's review of collateral attacks on state criminal convictions is governed by the parameters set forth in the AEDPA, which amended Section 2254. Under the AEDPA, the state court's adjudication of a petitioner's claims on their merits is accorded deferential review. *Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007). A federal court may only grant habeas corpus relief under Section 2254(d) with respect to a claim adjudicated on its merits in a state court proceeding if that state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

---

[2]        *See* Return at p. 4.

the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Daniels v. Lee*, 316 F.3d 477, 485 (4th Cir. 2003), *quoting* 28 U.S.C. §§ 2254(d)(1) & (2); *see also Byram v. Ozmint*, 339 F.3d 203 (4th Cir. 2003).

With respect to the first prong of the analysis, the United States Supreme Court has explained that a state court adjudication is "contrary to" clearly established Federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). An "unreasonable application" of Federal law will be found "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-413. An "unreasonable application" likewise will be found if the state court "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled. *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (opinion of Kennedy, J.). Yet, as *Williams* teaches, a state court's "unreasonable application" of the law informs the federal court to the extent that the latter "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Bates v. Lee*, 308 F.3d 411, 417 (4th Cir. 2002), *cert. denied*, 538 U.S. 1061 (2003), *quoting Williams*, 529 U.S. at 411.

Turning to the second prong of the analysis, Section 2254(d)(2)'s determination of whether there exists an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" is framed by Section 2254(e)(1), which provides that the findings of fact by a state court are entitled to a "presumption of correctness" and the petitioner must bear the burden of rebutting that presumption by "clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). The federal courts must accord "considerable deference in their review of

state habeas proceedings." *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005), *citing (Terry) Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Thus, even if an error were identified in the record, "the habeas petitioner will be entitled to relief only if the habeas court is 'in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Jones v. Polk*, 401 F.3d 257, 265 (4th Cir. 2005), *quoting O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (internal quotation marks and citation omitted). As *Jones* explains, "[t]he proper inquiry is not 'merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Jones*, 401 F.3d at 265, *quoting Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

When Congress crafted this deferential standard of review in the AEDPA, it was at least partially motivated "to limit federal intrusion into state criminal adjudications." *(Michael) Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). As Judge Wilkinson observed in *Lovitt*, "[i]t is, after all, the job of state courts to faithfully apply federal law. U.S. Const., Art. VI, cl. 2. Their efforts in this regard are to be respected as the acts of sovereign entities, whose sworn allegiance to the Constitution and the laws of the United States is as solemn as our own." *Lovitt*, 403 F.3d at 178.

### C. Discussion of Petitioner's Grounds for Habeas Corpus Relief

| | |
|---|---|
| Ground One: | Ineffective Assistance of Counsel. |
| Supporting Facts: | Trial counsel misadvised applicant regarding the results of the gunshot residue test, which revealed he had gunshot residue on his hands. Counsel also told applicant how to answer the plea Judge's question's. Further that counsel failed to move to suppress statement's made to police officer's. Finally, counsel failed to object to the testimony of Dr. Goldberg who was not qualified. As a result of the above counsel render ineffective assistance of counsel. |

A defendant who pleads guilty upon the advice of counsel can only attack the voluntary or intelligent character of his plea by showing ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52 (1985) (cited in *Richardson v. State*, 310 S.C. 360, 426 S.E.2d 795(1993)). Petitioner first must show that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668 (1985). In the context of a guilty plea, Petitioner also must establish prejudice by proving that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The defendant must show that "there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

1. **Misadvice as to significance of gunshot residue evidence.**

Petitioner first contends his counsel misadvised him "regarding the results of the gunshot residue test, which revealed [Petitioner] had gunshot residue on his hands".

At the plea hearing, the solicitor recited the factual basis, in which she noted that in Petitioner's statements to 911 and police, he claimed he was on the other end of the mobile home, heard a thud, and broke in the locked bathroom door with a knife to find the victim dead from a self-inflicted gunshot wound to the face. Petitioner admitted he and the victim had argued earlier because he thought the victim had been out the night before with someone else. The solicitor noted that the State would be relying at trial on the physical evidence, which was inconsistent with Petitioner's statement to police – including: (1) the gun found in the sink was unloaded, (2) high velocity blood spatter indicated the bathroom door was open when the gun was fired; (3) Petitioner had a "gimp left arm, which was not messed up earlier", (3) the angle of the shot, the stippling on the victim's hands, and the distance of the wound indicated the victim was not holding the gun when she was shot, (4) there were no pry marks on the door, and (5) Petitioner had high velocity blood spatter on his clothing, indicating that he was present when the high velocity blood spatter occurred. (PCR App. 20-22). At the sentencing phase, family members addressed the court (PCR App. 26) and then the chief investigator addressed the Court



(PCR App. 47) and described Petitioner's "cold" demeanor and lack of grief at the scene, and noted that the right-handed victim had been shot in the left side of the face. He noted that the victim had debris on her face and the residue on the victim's hands appeared consistent with her hands having been raised in a defensive fashion covering the right side of her face. (PCR App. 47) The investigator noted that the high speed blood spatter on Petitioner's clothing, the bathroom floor, and on the door indicated that the door to the bathroom was open, Petitioner was in the room when the shot was fired, and there were no marks on the door which showed a forced entry, as Petitioner had claimed. (PCR App. 48-50).

Counsel told the judge at the plea that in its efforts to substantiate Petitioner's claim that he was not in the room, the defense hired a Dr. Robert Goldberg, "who is extensively known as a forensics examiner", as well as being a doctor and a lawyer. Dr. Goldberg reviewed the forensic evidence in the case, and then told the defense what he believed happened. Dr. Goldberg also suggested to the defense that they have Petitioner evaluated for post-traumatic stress disorder ("PTSD"). The defense hired a Dr. Venn, who concluded that Petitioner did suffer from PTSD and could not remember what happened at the time of the incident.

During the motions hearing at PCR, attorney Stoudemire again testified that the defense expert, Dr. Goldberg, told them the forensic evidence was inconsistent with Petitioner's claim that he was not in the room. This led Dr. Goldberg to suggest the evaluation for PTSD, since Petitioner could not admit that he was actually in the room to his defense team. (PCR App. 84). Stoudemire also went through the evidence against Petitioner despite his claims he was not in the room when the shot was fired, including: (1)the gunshot residue on Petitioner's person; (2) the victim's blood on Petitioner which he could not explain; (3) the opinion of their expert Dr. Goldberg that the bathroom door could not have been closed when the shot occurred due to the presence of blood spatter inside the door jamb; (4) the lack of fresh "jimmy marks" on the door, despite Petitioner's claim that he had to force the door open with a pocketknife; and (5) the fact that she had been shot at some distance, indicating the victim would have had to have held the

gun at an extremely awkward angle if she had shot herself in the face. Given this evidence, which the defense expert opined meant that Petitioner was in the room and the door was open when the shot was fired, as well as Petitioner's statements to police which contradicted the physical evidence, the defense felt the likelihood of conviction was "one hundred percent" – for which Petitioner could face a sentence of life without parole. Thus, the defense lawyers felt the best they could do for their client would be to eliminate the possibility of life without parole. (PCR App. 86-88).

Attorney Epps also noted that he and Dr. Goldman reviewed all the forensic evidence at the sheriff's department, and that the expert reviewed all of the discovery provided to the defense. Epps noted that he did not believe there was a viable defense given that Petitioner had made a statement to police after the crime that was inconsistent with the physical evidence. Epps knew the defense had "*serious problems*", including the fact that "*if you take time and look at the autopsy report, it's going to be real hard to come to a conclusion that it was a self-inflicted wound*". (PCR App. 92-94).

Petitioner testified during his case in chief at PCR that his counsel told him the only way he could have gotten the lead particles on his hands were if he were within six to eight inches of a gunshot, but Petitioner had since found a transcript from someone else's trial where an expert testified that 75% of people who discover a victim end up with amounts above threshold levels. Petitioner stated that during defense meetings he challenged Dr. Goldberg on the opinion that Petitioner could have only gotten the residue on his hands from being in the presence of a gunshot, but Dr. Goldberg told Petitioner that Petitioner did not "have the credentials to beg to differ". (PCR App. 104-06). Later, Petitioner stated he was not sure about the credentials of Dr. Goldberg, and asserted that Dr. Goldberg was "obviously . . . not a very high caliber forensic expert" because what he asserted was impossible is supposedly common according to other experts. However, when Petitioner tried to introduce a transcript of another expert's testimony into evidence, the State's hearsay objection was sustained. (PCR App. 110-11). Petitioner

ultimately complained that his lawyers received "errant advice" from Dr. Goldberg on the gunshot residue, and they should have gotten a second opinion or checked into Dr. Goldberg's credentials before advising Petitioner to plead guilty. (PCR App. 114-15). On cross, Petitioner admitted he was not an expert in forensic matters or gunshot residue, and stated his counsel were mistaken when they took the advice of Dr. Goldberg, who was wrong in his analysis. (PCR App. 117-18; 121). Petitioner also told the court that he had a "clear recollection" of the events on the day of the incident and he was not in the bathroom when the gun went off (despite his statements at the plea hearing to the contrary regarding his inability to recall events of that day). (PCR App. 119-20)

Counsel Stoudemire testified during the State's PCR case that after gunshot residue was found on Petitioner (despite Petitioner's claims that he was not in the room), the defense started looking for a forensic expert. With the assistance of a private investigator, the defense called a number of lawyers who had used Dr. Goldberg, and they talked with Dr. Goldberg. They felt he was qualified and hired him. After Dr. Goldberg reviewed the evidence, he came to opinions that were not favorable to the defense. Stoudemire noted that the gunshot residue evidence was just part of the evidence in the case, and the other evidence was "overwhelming". (PCR App. 127-29). When asked on cross about whether the defense considered whether Petitioner could have gotten blood and gunshot residue on him after finding the victim, Stoudemire pointed out that the blood spatter on the jamb and the lack of any marks from tampering with the door were still remaining "major factors" refuting Petitioner's story. (PCR App. 133).

Attorney Epps testified during the State's case that aside from the blood spatter on the door jamb, the autopsy report conflicted with Petitioner's claims, given the inconsistency of that evidence with a self-inflicted wound. Epps noted that the gunshot residue on Petitioner's hands was but one factor among a "collection of those things" showing Petitioner's guilt. (PCR App. 137-39).

The PCR court rejected Petitioner's claim of ineffective assistance of counsel, finding Petitioner did not present any evidence to support his claims that counsel misadvised him regarding the gunshot residue evidence, or that Dr. Goldberg was not qualified.  (PCR App. 159-60).  The state appellate courts denied certiorari after *Johnson* "no merit" review.

These determinations are supported by the record and are not objectively unreasonable. As noted before, there is no dispute that counsel accurately told Petitioner what the expert found – that the gunshot residue test was positive, and that this, in conjunction with the other evidence, conflicted with Petitioner's claim that he was not in the bathroom when the shot occurred.  If anything, then, Petitioner's claim must be that the defense expert was wrong.  However, this is not a viable claim for ineffective assistance of counsel.  The appropriate parameters of actionable ineffective assistance of counsel do not allow relief merely by showing that an expert witness was incompetent, unprepared, or ineffective.  In short, there is no constitutional claim of ineffective assistance of an expert witness.  As the Fourth Circuit has held:

> The Constitution does not entitle a criminal defendant to the effective assistance of an expert witness.  To entertain such claims would immerse federal judges in an endless battle of the experts to determine whether a particular psychiatric examination appropriate. *See Harris v. Vasquez*, 949 F.2d 1497, 1518 (9th Cir. 1990); *Silagy v. Peters*, 905 F.2d 986, 1013(7th Cir. 1990).  Furthermore, it would undermine the finality of state criminal convictions, which would constantly be subject to psychiatric reappraisal years after the trial had ended.  *Harris*, 949 F.2d at 1517-18; *Silagy*, 905F.2d at 1013. This circuit consistently has "rejected the notion that there is either a procedural or constitutional rule of ineffective assistance of an expert witness, rather than ineffective assistance of counsel." *Pruett v. Thompson*, 996 F.2d 1560, 1573 n. 12 (4th Cir. 1993); *see also Poyner v. Murray*, 964 F.2d 1404, 1418 (4th Cir. 1992); *Waye v. Murray*, 884 F.2d 765, 766-67 (4thCir. 1989) (per curiam).  For example, the defendant in *Waye* claimed that his psychiatrist had not performed adequately because he had failed to emphasize *Waye's* diminished capacity in his trial testimony.  We rejected this claim and observed:
>
> > **[i]t will nearly always be possible in cases involving the basic human emotions to find one expert witness who disagrees with another and to procure an affidavit to that effect from the second prospective witness.**  To inaugurate a constitutional or procedural rule of an ineffective expert witness in lieu of the constitutional standard of an ineffective attorney, we think, is going further than the federal procedural demands of a fair trial and the constitution require.

Page 15 of 26

*Wilson v. Greene*, 155 F.3d 396, 401 (4th Cir. 1998) (emphasis added) (also rejecting the claim

that *Ake v. Oklahoma*, 470 U.S. 68 (1985), creates a Due Process malpractice standard for a

court-appointed expert's performance). *Cf. generally Jones v. State*, 332 S.C. 329, 504 S.E.2d

822 (1998).

However, it can be a valid claim for ineffective assistance that a expert's substandard

performance was due to some constitutionally deficient performance by counsel. As the Fourth

Circuit has stated:

> That there is no separately-cognizable claim of ineffective assistance of expert witnesses
> does not mean that a substandard performance by a psychiatrist at trial could never form
> the basis for habeas corpus relief. However, the constitutionally deficient performance
> must be that of counsel, in obtaining the psychiatric examinations or presenting the
> evidence at trial for example, not that of the psychiatrist or psychologist in failing to
> identify every possible malady or argument, no matter how tenuous.

*Poyner v. Murray*, 964 F.2d 1404, 1419 (4th Cir. 1992).

In the present case, there is nothing to show counsel's reliance on Dr. Goldberg was

improper. Counsel Stoudemire noted that their investigator talked with lawyers who had used

Dr. Goldberg before the defense hired him (PCR App. 128), and at the plea hearing counsel

noted Dr. Goldberg was "extensively known as a forensic examiner" who also had a medical

degree and a law degree. (PCR App. 31). Petitioner offered no proof at PCR that Dr. Goldberg

was unqualified or that counsel's reliance on him was unreasonable; thus, counsel could not have

been deficient even if Dr. Goldberg were wrong on the significance of the gunshot residue. As to



Petitioner's claim that counsel should have sought a second opinion or"checked up" on Dr.

Goldberg's opinion, the law does not require counsel to "second-guess" the expert's report or to

"expert shop" until one can be found who would testify favorably. *See Wilson v. Greene*, 155

F.3d 396 (4th Cir. 1998) (to be reasonably effective, counsel is not required to second-guess the

contents of an expert's report); *Poyner v. Murray*, 964 F.2d 1404, 1419 (4th Cir. 1992) (counsel

not required to "expert shop").

Thus, even if Dr. Goldberg were "wrong" about the gunshot residue, this would be attributed to him, not to counsel, since counsel's reliance on the expert was reasonable and an expert's mistakes do not create a constitutional violation. And, of course, the PCR court was correct that Petitioner offered no admissible proof that Dr. Goldberg was in fact in correct, as Petitioner freely admitted he was not a forensic expert. *See Bassette v. Thompson*, 915 F.2d 932 (4th Cir. 1990) (petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony).

Further, even a mistake as to the gunshot residue would not have been significant– as counsel pointed out, the gunshot residue was but one factor among other"overwhelming" factors refuting Petitioner's story to police, including the spatter inside the door jamb, the lack of "jimmy marks" on the door, the spatter on Petitioner's clothing, and the inconsistency of the evidence from the autopsy with a characteristics of a self-inflicted wound. Since challenging the significance of the positive gunshot residue would not have created a viable line of defense, counsel could not have been deficient, nor Petitioner prejudiced. *See Savino v. Murray*, 82 F.3d 593, 599 (4th Cir. 1996) (if there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error in failing to disclose or pursue it cannot be prejudicial); *Bell v. Evatt*, 72 F.3d 421 (4 Cir. 1995) (the decision to recommend GBMI verdict was reasonable given overwhelming evidence and desire to reduce possible sentencing outcomes). It is recommended that this issue is without merit and should be denied.



**2.      Counsel allegedly telling Petitioner how to answer questions.**

Petitioner nest contends his counsel were ineffective for allegedly telling him how to answer the judge's questions during the plea proceeding.

At the plea, Petitioner was sworn and answered affirmatively when the trial court asked if he would respond truthfully. (PCR App. 7). At the end of the colloquy, Petitioner stated that he had not been pressured or coerced, that his plea was of his own free will, and that he had answered the judge's questions truthfully. (PCR App. 17–19).

Page 17 of 26

At PCR, Petitioner testified that at the plea he could not say what his "level of competence" had been at the time of the plea, as he was just ready to get it over with and did not really care what happened to him. (PCR App. 103-04). During his rebuttal testimony, Petitioner claimed his attorneys told him not to disagree with anything at the plea regarding his guilt or innocence because it might offend the judge, and to just answer all the judge's questions, "yes, sir". (PCR App. 148). On cross, Petitioner testified that his attorneys gave him a "crash course" on how to answer the judge's questions. (PCR App. 149-50) During the state's case, counsel Epps testified that he explained an *Alford* plea to Petitioner, and that it was Petitioner who ultimately made the decision to plead. (PCR App.135-36). Epps testified he would have just told Petitioner to answer the judge's questions to the best of his ability, and to tell the judge if he did not understand the question. (PCR App. 146).The PCR court found that counsel's testimony "more credible" on this issue, and thus found that counsel explained the *Alford* plea and only asked Petitioner to answer the judge's questions truthfully. (PCR App. 160). The state appellate court denied certiorari after *Johnson* "no merit" review.

Obviously, Petitioner's own statements under oath at the plea hearing that he answered the questions truthfully and had not been pressured or coerced, coupled with trial counsel's testimony in PCR that he did not tell Petitioner how to answer the questions, provide ample support in the record to sustain the state courts' rejection of this claim. Moreover, this claim by itself does not establish a claim for relief – even if counsel had supposedly "told" Petitioner how to answer the questions, that does not by itself establish that Petitioner was prejudiced and otherwise would have insisted on trial. Indeed, Petitioner himself extensively described the plea negotiations, and admitted that he agreed to plead "no contest" since his lawyers told him the evidence was unfavorable. (PCR App.113). Petitioner has neither alleged nor established a cause and effect relationship between this claim and his decision to plead guilty. The issue is without merit and it is recommended that it should be denied.



3.    **Failure to move to suppress the statement to police.**

As noted previously, one of the biggest problems the defense faced was the inconsistency between the physical evidence and Petitioner's statements on the 911 call and later to police. {PCR App. 88; 93}. Petitioner claimed at PCR that he was not "*Mirandized*" until he was brought to the detention center, but asserted his counsel did not file a motion to suppress his statement, instead telling him the defense could not "get around" it. He asserted that defense counsel should have at least tried to suppress it, as "it was only paperwork", and "could only benefit, not hurt". (PCR App. 106-07). Petitioner testified that had counsel researched the evidence, he would not have pled guilty, but would have gone to trial. {PCR App. 112}.

Counsel Stoudemire testified that at the time the police took a statement from Petitioner, he was not a suspect, so *Miranda* warnings were not necessary. Counsel stated Petitioner voluntarily gave police a statement before he was represented by counsel, and it turned out to be inconsistent with the physical evidence. According to counsel, the defense looked at the statement, but saw no valid legal basis for seeking suppression. However, Stoudemire noted that had the defense gone to trial they would have "challenged everything". (PCR App. 129-30). On cross, counsel noted the defense discussed the statement repeatedly, but at no time thought they could get it suppressed. (PCR App.132).

During the court's questioning of attorney Epps, it was noted that Petitioner already had given his version of events to the 911 operator before police ever questioned him. Moreover, Epps disputed Petitioner's claim that he was not *Mirandized*, noting that while Petitioner gave his first statement on January 18, 2002, the defense file reflected subsequent waivers on both January 19, 2002 and January 21, 2002. In any event, counsel noted that in his opinion the statement would have likely been admitted had Petitioner decided to go to trial. (PCR App.141-43).

The PCR court found more credible trial counsel's testimony that the defense discussed the statement but concluded it was unlikely to be suppressed. Thus, it rejected the claim. (PCR App. 160}. The state appellate court denied certiorari after *Johnson* "no merit" review.

These state court decisions have support in the record and are sustainable pursuant to the highly deferential standard for federal review of state convictions. Of course, statements made while Petitioner was not in custody or subject to interrogation do not require *Miranda* warnings, and this would certainly include Petitioner's story as explained in his 911 call for help, as well as his initial statement to responding police prior to any arrest or custodial seizure. *See generally Rhode Island v. Innis*, 446 U.S. 291 (1980); *Beckwith v. United States*, 425 U.S. 341 (1976). While Petitioner claimed he was never *Mirandized* until he had been brought to the detention center, he offered no evidence to challenge trial counsel's testimony that the initial statements to the 911 operator and police were voluntary and admissible as non-custodial and not the product of interrogation. *See Savino v. Murray*, 82 F.3d 593, 599 (4th Cir. 1996) (if there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error in failing to disclose or pursue it cannot be prejudicial, and rejecting habeas claim that attorneys should have pursued intoxication defense where petitioner offered no proof his alleged cocaine usage made him incapable of intent or deliberation); *Bassette v. Thompson*, 915 F.2d 932 (4th Cir. 1990) (petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony). Petitioner's third issue is without merit and should be denied.

4.      **Failure to "object" to the testimony of Dr. Goldberg**

Finally, Petitioner contends that his counsel was ineffective for failing to "object" to the opinions of defense expert Dr. Goldberg, who Petitioner asserts was not qualified. This issue has already been addressed in subsection (A)(1), supra. As argued there and incorporated here, Petitioner offered no proof to show that Dr. Goldberg was in fact unqualified and that counsel's selection of Dr. Goldberg and reliance upon him was unreasonable. Since counsel's selection of

and reliance upon Dr. Goldberg was reasonable, any mistakes Dr. Goldberg allegedly made are not the fault of counsel and thus not the basis for a constitutional claim of ineffective assistance. *Wilson v. Greene*,155 F.3d 396, 401 (4th Cir. 1998). Regardless, Petitioner did not offer sufficient proof that Dr. Goldberg in fact made a mistake as to the significance of the gunshot residue evidence, but even if he had, the other physical evidence – including the blood spatter on Petitioner and the door jamb, and the autopsy report – was more than sufficient to suggest that the decision to plead guilty would not have changed. *See Savino v. Murray*, 82 F.3d 593, 599 (4th Cir. 1996) (if there exists no reasonable probability that a possible defense would have succeeded at trial, the alleged error in failing to disclose or pursue it cannot be prejudicial). Petitioner's final issue regarding ineffective assistance of counsel is without merit and should be denied.

## GROUND TWO

Ground Two:          Involuntary Guilty Plea

Supporting Facts:    Base upon counsel' advise as stated above the plea was unknowingly based on the facts in relation to the law. *Hill v. Lockhart*, 474 U.S. 52, 56 106 S.Ct.366, 369 (1985).

In his second ground for habeas relief, Petitioner contends that for the reasons alleged in ground one his counsel's advice was  erroneous and thus his plea was involuntary. For the reasons expressed in Ground One, *supra*, counsel was not deficient nor Petitioner prejudiced, and thus his plea was not involuntary based on any allegations of ineffective assistance of counsel.

Moreover, the record itself belies any notion that the plea was involuntary. When pleading guilty, a defendant must understand the charge and the consequences of the plea. The record should indicate a factual basis for the plea. Further, the court should explain to the defendant the waiver of his constitutional rights as well as possible sentencing possibilities. *See Gaines v. State*, 335 S.C. 376, 517 S.E.2d 439 (1999) (citing *Boykin*).

Moreover, "while the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact

Page 21 of  26

subject to the requirements of [former § 2254(d), now § 2254(e)(1)], the historical facts underlying such pleas are entitled to deference under the statute". *Sargent v. Waters*, 71F.3d 158, 160 (4 Cir. 1995).

Petitioner's plea complied with the mandates in *Boykin v Alabama*. The trial court advised Petitioner of his right to a jury trial, his right to confront witnesses, as well as his right to remain silent, and also inquired as to Petitioner's mental state, his present awareness, his understanding of an *Alford* plea, the presence or absence of any promises or coercion, the waiving of any defenses, and Petitioner's satisfaction with his attorney. Petitioner indicated his understanding of these issues and the voluntariness of his decision under oath at the plea proceeding. (PCR Appendix pp. 2-19). The trial court specifically inquired in detail as to Petitioner's mental state, and counsel specifically indicated at the plea proceeding that he had no difficulty communicating with Petitioner and that Petitioner understood the proceedings. (PCR App. 11-13). At PCR, trial counsel testified that Petitioner understood their discussions and voluntarily decided to plead guilty; the PCR court found the testimony credible. (PCR Appendix pp. 81-82; 90-92; 134-36; 140-41;145-46). The PCR trial court therefore found that Petitioner's plea was "knowingly and voluntarily made", and this decision is not objectively unreasonable under *Williams v. Taylor*. (PCR Appendix p. 160-61). It is recommended that this issue be denied.

### GROUND THREE

Ground Three:      Motion for Mental Evaluation

Supporting Facts:   At the beginning of the Post-Conviction hearing the applicant's counsel moved the court to continue the matter in order to be evaluated. Both motion's were denied. Applicant wanted to establish by the physical evidence.. [sic] he further asserted that this rendered and made his plea involuntary.

In his third ground for relief, Petitioner contends the PCR Court erred in denying his motion for a mental evaluation. At the plea hearing, counsel noted that their expert, Dr.

Goldberg, suggested that they have Petitioner evaluated for PTSD in an attempt to explain why he continued to tell a story that was inconsistent with the physical evidence (other than the explanation that Petitioner was lying). Counsel had Petitioner evaluated by psychologist Dr. Venn, who issued a report finding Petitioner suffered from PTSD, which explained his supposed inability to correctly remember what happened at the time the victim was killed. (PCR App. 9-10; 26-27; 31-34).

At the PCR hearing, Petitioner's counsel moved for a mental evaluation because Dr. Venn had not analyzed whether Petitioner was competent or criminally responsible. The judge heard from trial counsel, who both testified that neither Dr. Goldberg nor Dr. Venn ever raised any concerns that Petitioner was not competent or criminally responsible. Moreover, neither counsel had any problems communicating with Petitioner or any concerns as to his mental status. (PCR App. 75-98). Petitioner called his mother to testify, who stated that on the day of the plea she found his pill bottle empty, and that Petitioner seemed abnormally calm,. However, she admitted she did not know if he had in fact taken too many pills. (PCR App. 98-100).

The PCR court denied the motion, finding Petitioner "*had to do better than that*", and noting that the defense had talked to Dr. Goldberg and Dr. Venn, but no concerns were raised. The PCR court found nothing had been presented which would justify an evaluation. (PCR App. 100-02). It must be noted that despite Petitioner's claims at the plea and Dr. Venn's report that he could not remember the events of the shooting due to PTSD – which justified the *Alford* plea – Petitioner was adamant under the PCR court's questioning that he had a clear recollection of the events, and he was not in the bathroom when the victim had been shot. (PCR App. 119-20).

At the conclusion of the PCR hearing, the PCR specifically noted on the record that after observing Petitioner and hearing his testimony, the court had no concerns whatsoever about Petitioner's competence and understanding. (PCR App. 151). Similarly, in the Order of Dismissal, the PCR court found that Petitioner's mental capacity was never an issue, and also rejected the claim inasmuch as Petitioner was asserting it as a basis for an involuntary plea. The

court noted that Petitioner was intelligent and found Petitioner understood his case well and *"prepared his grounds in depth"*. The court also noted Petitioner repeatedly communicated with his counsel during the course of the PCR hearing, and that his thoughts were *"well-organized"*. (PCR App. 163-64).

Here, any claim that the PCR court erred in refusing to grant a mental evaluation is not a viable claim in federal habeas corpus. Habeas corpus relief is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged defects in state post-conviction procedures are not cognizable in a federal habeas corpus action. *Wright v. Angelone*, 151 F.3d 151 (4th Cir. 1998); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review).

To the extent that this claim is read as challenging Petitioner's mental status, there is ample support in the record, as discussed above, for the PCR court's determination that there was no viable issue as to Petitioner's mental competence, given that despite observation by both trial counsel, Dr. Goldberg, Dr. Venn, the trial court, and the PCR court, no one had any concerns about Petitioner's mental status. Read as a whole, Petitioner's testimony at PCR certainly belies any notion that he was incapable of understanding the proceedings or assisting his counsel. Similarly, Petitioner presented no evidence at any time that would call into question his ability to tell right from wrong at the time of the incident – indeed, he called 911 and provided his version of events to them as well as responding officers, and Petitioner himself claimed on the stand at PCR that he had a perfect recollection of the day's events. *See Moss v. Hofbauer*, 286 F.3d 851,864-65 (6th Cir. 2002) (speculation as to possible lines of cross-examination insufficient where no evidence presented how witness would have testified had the cross-examination been pursued; *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3rd Cir. 1991) (applicant cannot show deficiency "based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense"; rather, facts must be presented). *See also Savino*

*v. Murray*, 82 F.3d 593 (4th Cir. 1996) (rejecting habeas claim that attorneys should have pursued intoxication defense where petitioner offered no proof his alleged cocaine usage made him incapable of intent or deliberation); *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003) (PCR applicant did not meet his burden of proving that he was incompetent to stand trial; supposed effects of his anti-seizure medication did not affect his ability to consult with counsel or under stand the proceedings, applicant answered questions appropriately at trial, and a forensic psychiatrist found him competent prior to trial). Petitioner's final ground for habeas relief is without merit and it is recommended that it be denied.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Petitioner's Petition **[1] be dismissed**, and that Respondents' motion for summary judgment **[16] be granted.**

George C. Kosko
United States Magistrate Judge

May *12*, 2008

Charleston, South Carolina

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).